# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

## NOTICE OF ISSUANCE OF MANDATE

FILED
APR 0 7 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DATE: April 6, 2005

TO: John M. Waters
United States District Court
Central District of Illinois
151 U.S. Courthouse
600 E. Monroe Street
United States Courthouse & Federal Building
Springfield, IL 62701

FROM: Gino J. Agnello, Clerk

RE: 04-2442
USA v. Wade, Levar
01 CR 30030, Jeanne E. Scott, Judge

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

[ ] No record filed
[X] Original record on appeal consisting of:

| ENCLOSED: | | TO BE RETURNED AT LATER DATE: |
|---|---|---|
| [1] | Volumes of pleadings | [ ] |
| [ ] | Loose pleadings | [ ] |
| [2] | Volumes of transcripts | [ ] |
| [ ] | Volumes of exhibits | [ ] |
| [ ] | Volumes of depositions | [ ] |
| [3] | In Camera material | [ ] |
| [ ] | Other_____ | [ ] |
| | Record being retained for use in Appeal No. _____ | [ ] |

Copies of this notice sent to:    Counsel of record
[X]    United States Marshal
[X]    United States Probation Office

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

Date: 4-13-05                                               s/Marleen Cooke
(1071-120397)                                        Deputy Clerk, U.S. District Court

**CERTIFIED COPY**

In the
## United States Court of Appeals
### For the Seventh Circuit

No. 04-2442

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LEVAR V. WADE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:01-30030-001—Jeanne E. Scott, *Judge.*

ARGUED JANUARY 26, 2005—DECIDED MARCH 15, 2005

Before EASTERBROOK, RIPPLE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Bad timing often results in one being in the wrong place at the wrong time. Levar Wade will certainly attest to that, for it was being in the wrong place at the wrong time that resulted in his ticket to a federal prison. Because bad timing is the true cause of his predicament, not an illegal detention or a nonconsensual search, we reject his appeal and affirm the judgment of the district court.

Acting on a tip that a fellow named Michael Sullivan was a drug courier bringing crack cocaine from Chicago into the Amtrak station in Springfield, Illinois, FBI agents and local police set a trap to nab him when he got off a train. In a stroke of bad luck, Wade exited the train carrying a duffel bag around the same time Sullivan stepped off. Sullivan, who was also carrying a bag, appeared to be around the same age—early twenties—as Wade. Sullivan was approached and led away. Another officer, Detective Stephen Welsh, thinking Sullivan might have a cohort,[1] followed Wade through the station.

At the front of the station, Welsh decided to approach Wade, but he first radioed for two other officers, Williamson and Flynn, to join him. Williamson and Flynn came from opposite sides of the building to assist. Welsh, who was not in uniform, approached Wade just outside the station, identified himself as an officer, and asked to speak with him. Welsh may have "touched" Wade's arm to "get his attention," and after Wade agreed to speak, Welsh suggested that they move inside the station, "where it was warm and well lit." Wade did not say anything in response, and he and the officers stepped inside. The suggestion to go inside the station was not unreasonable given that it was around 10 p.m., on a post-Thanksgiving night in November.

Once inside the station, Welsh stood in front of Wade while the other two officers stood "a little bit away" behind him. Welsh asked to see Wade's identification, but when Wade started to reach for his duffel bag Welsh put out his hand and said something to the effect of "wait a minute." Welsh then asked if Wade had any weapons or contraband in the bag. After Wade replied "No," Welsh asked "Can I

---

[1] As luck (good or bad) would have it, there was no real connection between Wade and Sullivan. They were not cohorts. Both, however, turned out to be carrying cocaine.

No. 04-2442                                                      3

search it?" and Wade said "Go ahead." As Welsh looked through the bag, he asked Wade if he would mind if Officer Flynn searched him. Wade said "No, go ahead." Flynn asked Wade if he had "needles or anything like that on you" and Wade said "No." Flynn then asked Wade, "Do you mind if I check you?" and Wade said "No, go ahead." A moment later, Flynn retrieved a plastic bag containing 54 grams of crack cocaine from Wade's inside jacket pocket. Wade was arrested and subsequently charged with possessing more than 50 grams of crack with intent to distribute. After his motion to suppress the crack failed, Wade conditionally pled guilty, reserving the right to appeal the denial of his motion.

Wade initially argued that his consent was not voluntarily given, but that contention gradually morphed into a claim that he was "illegally detained" by Welsh and the other officers. If he's right on either count, the search and seizure was invalid.

As we see it, there really are no true credibility findings at issue here, but to the extent there are, our review is only for clear error. *United States v. Pedroza*, 269 F.3d 821 (7th Cir. 2001); *United States v. Marshall*, 157 F.3d 477 (7th Cir. 1998). Questions of law—that is, the legal conclusion of whether Wade's consent was voluntary and whether he was illegally seized—are reviewed *de novo*. *Ornelas v. United States*, 517 U.S. 690 (1996).

What we have recounted thus far essentially comes from Welsh's suppression hearing testimony. Wade did not testify at the hearing or offer a contrary view. In denying Wade's motion to suppress, the district judge accepted the testimony as true.

Even though consensual searches, and stops that fall short of seizures, do not implicate the Fourth Amendment, *United States v. Hendricks*, 319 F.3d 993, 999 (7th Cir. 2003), we recognize that there is a bit of intimidation in-

volved anytime a police officer stops a person and asks for permission to conduct a search. The person to whom the request is directed might consider several possibilities. If he refuses, he may think the police will assume he's got something to hide and not allow him to leave. Although the former is probably true, he should know, assuming he didn't sleep through high school civics classes, that the latter proposition is not true. If he consents to the search, it might be because he has nothing to hide, or because he thinks a search will not find what he is concealing. Regardless of the thought processes someone who is asked to consent to a search might go through, we look to objective factors—whether a reasonable person would feel free to terminate the encounter. *Id.* at 1000; *Pedroza*, 269 F.3d at 826. And here the objective factors augur for a finding of no illegal detention and a freely given consent that does not implicate the Constitution.

Wade seems to concede that his initial encounter with Welsh involved a nonthreatening request. He argues, though, that the consensual encounter became a detention when Welsh asked him to accompany him inside the station, requested identification, and physically obstructed him from reaching into his duffel bag. Although Wade relies on *Florida v. Royer*, 460 U.S. 491 (1983), to argue that an officer's request to move to another location is a seizure, *Royer* is easily distinguished. In holding that a detention had occurred, the Court in *Royer* viewed as highly relevant the fact that the officer had not returned the defendant's identification at the time of the request to move to another location. *Royer*, 460 U.S. at 501-02; *United States v. Borys*, 766 F.2d 304, 310 (7th Cir. 1985) (explaining that officer's retention of the defendant's documentation in *Royer* was crucial to the Court's finding that a detention occurred).

A train station is a public place without custodial overtones. *See United States v. Edwards*, 898 F.2d 1273, 1274,

1276 (7th Cir. 1990). Welsh did not take possession of any of Wade's belongings or identification and did not even request identification until after Wade agreed to move back inside. Moreover, Welsh explained the reason for moving inside—it was warmer and better lit. A reasonable person faced with Welsh's request and explanation would have concluded that his consent was not required and that he was free to decline. *See Pedroza*, 269 F.3d at 826-27; *United States v. Morgan*, 725 F.2d 56, 59 (7th Cir. 1984) (polite request to move to another location in a busy public place did not constitute a seizure). Finally, requests for identification do not imply a detention. *See Terry v. Richardson*, 346 F.3d 781, 785 (7th Cir. 2003).

Alternatively, Wade argues the consensual encounter became a detention when Welsh requested permission for Flynn to search him; he contends the physical stance of the officers at the time the request was made was coercive. Specifically, he contends that with Welsh bent down looking through the duffel bag and the two other officers, who were in uniform, standing behind him, a reasonable person would have concluded that he was not free to leave. In support, Wade relies on *United States v. Jaramillo*, 891 F.2d 620 (7th Cir. 1989), arguing that once an officer requests permission to search a subject, a consensual encounter becomes an investigatory stop.

Though the court in *Jaramillo* agreed with the district court's conclusion (not challenged by the government on appeal) that a consensual encounter became a detention by the time the officers requested permission to pat down the subjects, that conclusion was based on the totality of circumstances. And those circumstances, in effect telling the subjects of the search that they were suspected of possessing narcotics and asking them "about the unusual bulkiness around their waists," are quite different from what we have here. In addition, more recent precedent of the Supreme Court and this court makes certain that an encounter may

6                                                               No. 04-2442

remain consensual even after a request to search. *See United States v. Drayton*, 536 U.S. 194, 206 (2002) (encounter remained voluntary even after officers asked bus passengers to submit to search of luggage and persons); *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996) (defendant consented to pat-down search and the court noted similar encounters are consensual and do not implicate the Fourth Amendment); *United States v. Adebayo*, 985 F.2d 1333, 1340 (7th Cir. 1993) (encounter remained consensual after narcotics agents requested permission to search defendant's briefcase and jacket).

Nor did the presence of the two officers who stood "off to the side" and "behind" Wade rise to the level of a "threatening" situation. *See Hendricks*, 319 F.3d at 1000. Only Welsh stood before Wade, and none of the officers brandished weapons or physically restrained Wade in any way. *See Drayton*, 536 U.S. at 204 (that police officers did not use or make an overwhelming show of force, engage in intimidating movement, brandish weapons, block exits, make threats, give commands, or even employ an authoritative tone of voice were all factors evidencing noncoercive nature of encounter with bus passengers). None of the circumstances described by Wade overcome the conclusion that the encounter remained consensual throughout and that the situation did not escalate into an illegal detention.

A true Copy:

Teste:

                                        *Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—3-15-05

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

JUDGMENT - WITH ORAL ARGUMENT

**CERTIFIED COPY**

Date: March 15, 2005

**BEFORE:**     Honorable FRANK H. EASTERBROOK, Circuit Judge

                Honorable KENNETH F. RIPPLE, Circuit Judge

                Honorable TERENCE T. EVANS, Circuit Judge

No. 04-2442

UNITED STATES OF AMERICA,
        Plaintiff - Appellee

  v.

LEVAR V. WADE,
        Defendant - Appellant

Appeal from the United States District Court for the
Central District of Illinois
No. 01 CR 30030, Jeanne E. Scott, Judge

    The judgment of the District Court is AFFIRMED, in accordance with the decision of this court entered on this date.

(1061-110393)